[L. A. No. 3562. Department One.—October 15, 1914.]

In the Matter of the Estate of FRANCIS WILLIAM BRADLEY, Deceased; JAMES W. GOING et al., Appellants, v. IDA MAY BRADLEY et al., Respondents.

ESTATE OF DECEDENT—SALE OF REAL PROPERTY—APPEAL FROM ORDER CONFIRMING.—The purchaser named in a return of an administrator's sale of real property is a "party aggrieved" by an order confirming the sale to a person other than himself, and is entitled to appeal therefrom.

ID.—BROKER AFFECTED BY ORDER OF CONFIRMATION—RIGHT TO APPEAL. If such order of confirmation directs a broker, with whom money had been deposited by the purchaser named in the return, to pay

the money to the administrator, the broker also has a right to appeal from the order.

ID.—RETURN OF SALE—VACATION OF SALE—ACCEPTANCE OF ADVANCE BID.—Upon the hearing of an administrator's return of a sale of real property it is not necessary, under section 1552 of the Code of Civil Procedure, in order to authorize the court to accept the increased offer of ten per cent, that it should appear that "the proceedings were unfair" or that the "sum bid was disproportionate to the value" of the property; but this unfairness or disproportion must be shown to justify an order vacating the sale.

ID.—CONDITIONAL ADVANCE BID—POWER OF COURT TO ACCEPT.—Upon the hearing of an administrator's return of a sale of· real property the court has no authority to accept an advance bid, made conditional upon the repayment to the bidder of a sum of money previously paid by him to a real estate broker on account of the purchase price of the property, which sale the heirs have objected to and the court has refused to confirm.

ID.—ORDER REQUIRING BROKER TO PAY MONEY TO ADMINISTRATOR—POWER OF COURT TO MAKE.—Upon such hearing the court is without authority to make an order directing the real estate broker to pay the sum deposited with him by the bidder to the administrator. This would constitute a judgment against him in a proceeding to which he was not made a party.

ID.—UNFAIRNESS OF SALE—BROKER EXPECTING TO PROFIT BY RESALE.—If it appears upon the hearing of a return of the sale of real property by an administrator that the purchaser is acting under the direction and in the interest of a real estate broker who is secretly purchasing the property himself in order to make a profit on a resale, the court is justified in finding the sale is tainted with unfairness within the meaning of sections 1552 and 1554 of the Code of Civil Procedure.

ID.—REAL ESTATE BROKER—TRUST RELATION—SECRET PROFITS.—A real estate agent, seeking the authorization of an owner to sell property, or the ratification of a sale already made without authority, is bound to disclose the price actually received or to be received by him on a sale. He has not the right, after making a sale for a given price, to represent that price to be smaller than it is, or to secretly purchase the property himself at a smaller price, in order to make the profit of a resale at a price which he might and should have secured for his principal.

APPEAL from an order of the Superior Court of San Diego County confirming an administrator's sale of real property. W. R. Guy, Judge.

The facts are stated in the opinion of the court.

Geo. B. Watson, and Hamilton & Lindley, for Appellants.

L. E. Dadmun, James E. Wadham, and J. C. Tobin *in pro. per.,* for Respondents.

SLOSS, J.—Upon the petition of Ida May Bradley, as administratrix of the estate of Francis William Bradley, deceased, the superior court of San Diego County, in which the administration of said estate was pending, made its order authorizing the administratrix to sell certain real property at private sale. On February 4, 1913, the administratrix made her return, showing a sale of the property to Hal G. Hotchkiss for four thousand five hundred dollars, four hundred and fifty dollars of which had been deposited with her, and praying for confirmation of the sale. The return coming on for hearing, objection to the confirmation was made on behalf of some of the heirs, and, a bid in the sum of five thousand five hundred dollars being presented by J. C. Tobin, the court made its order confirming the sale of said real estate to Tobin for five thousand five hundred dollars. The order further recited that James W. Going had in his possession the sum of two thousand three hundred dollars belonging to the estate and heirs of Francis William Bradley, deceased, and directed that Going pay said sum, within a stated time, to the executrix. From this order Going and Hotchkiss (who had made his bid at Going's request, and, it is claimed, on behalf of Going) appeal.

The order confirming the sale to Tobin was, in effect, a refusal to confirm the reported sale to Hotchkiss. The latter, therefore, is undoubtedly an aggrieved party, and he has the right to appeal. (*Estate of Leonis,* 138 Cal. 194, [71 Pac. 171]. See, also, *In re Pearsons,* 98 Cal. 603, [33 Pac. 451]; *Estate of West,* 162 Cal. 352, [122 Pac. 653].) And, whether or not Going has so connected himself with the Hotchkiss bid as to entitle him to appeal in his own name from the order refusing to confirm the sale to Hotchkiss, he is unquestionably a party aggrieved by the part of the order directing him to pay two thousand three hundred dollars to the administratrix. The respondents' position that the appellants are not interested, and are not entitled to appeal, cannot be sustained.

The evidence disclosed this state of facts. Going was a real estate agent. Hotchkiss was in his employ. In January,

1913, one of the heirs of the estate signed a paper authorizing Going to sell the property for seven thousand dollars, Going's commission to be anything received over six thousand dollars. Going was informed that the land belonged to the Bradley estate. On the same day he obtained the oral approval of the administratrix to the "listing of the property with him" for sale. A few days later Going obtained from J. C. Tobin an offer of five thousand five hundred dollars for the property, Tobin paying four hundred and fifty dollars down, and afterwards depositing a further two thousand three hundred dollars. A contract was signed by Going and Tobin. It was in the ordinary form of a deposit receipt signed by a real estate agent. By its terms Going, describing himself as agent, acknowledged the receipt from Tobin of four hundred and fifty dollars in part payment for the land, the entire purchase price being five thousand five hundred dollars. Terms of sale, including time for perfecting title, were stated, and the sale was declared to be "subject to approval of owner." Following Going's signature, there appeared an agreement, signed by Tobin, to "purchase the above described property on the above described terms."

While these negotiations were being carried on, Going informed the administratrix that he could get four thousand five hundred dollars for the place, and, upon the suggestion of her attorney that a written bid be made, he prepared a bid in writing, offering four thousand five hundred dollars for the property, had Hotchkiss sign it, and presented it, with a check for four hundred and fifty dollars, to the administratrix. Upon this bid the return of sale was made up and filed. Before the matter came up for hearing, Mr. Wadham, the attorney for the administratrix, learned that Tobin was to pay Going five thousand five hundred dollars, and informed Going that he felt obliged to call that fact to the attention of the court. When the return came on for hearing, Mr. Wadham informed the court that Going was getting five thousand five hundred dollars for the property, and that Hotchkiss the bidder, was acting for Going. The heirs other than the administratrix objected to the confirmation of the sale. Tobin was called and expressed his willingness to pay five thousand five hundred dollars for the land. The hearing was then continued for one week. At the adjourned hearing, Going testified to the transactions between himself, Tobin, and Hotchkiss. He

stated that the four thousand five hundred dollar bid had been made in behalf of Tobin. After this testimony had been given a written bid for five thousand five hundred dollars, signed by Tobin, was presented and filed. This paper, addressed to the administratrix and the estate, contained the following: "This bid is made on the assurance that the money that I have heretofore paid Mr. James W. Going on account of said property shall be fully repaid to me, and I shall not be required to make any payment in excess of two thousand seven hundred fifty dollars ($2,750.00) until said two thousand seven hundred fifty ($2,750.00) so paid to James W. Going is returned to me." Thereupon, there being no higher bid, the court confirmed the sale to Tobin. The court recited, in its order, the circumstances leading up to the Hotchkiss bid, that "said bid so signed by Hal G. Hotchkiss was unfair and disproportionate to the value of the property in this, that the said bid was not made *bona fide* by Hal G. Hotchkiss for and in his own behalf, but was made at the request of James W. Going, agent of said J. C. Tobin, . . . and that the sum of four hundred and fifty dollars so deposited, was . . . a portion of the money deposited by J. C. Tobin to be applied upon the purchase price of said property, and that said bid so signed by said Hal G. Hotchkiss was in . . . fact the bid made by said J. C. Tobin, and that said bid . . . was disproportionate to the value of the property in this, that it was one thousand dollars ($1000.00) less than the actual amount already bid by J. C. Tobin for the said property, said J. C. Tobin having renewed his said bid of five thousand five hundred ($5,500.00) in open court and in writing." The order goes on to recite that there is in the possession of Going, as agent of the heirs and the estate, and as agent of Tobin, two thousand three hundred dollars, paid by Tobin to Going to be paid to the administratrix and applied upon the purchase price of said property. After these recitals, and others relating to the adequacy of the price of five thousand five hundred dollars, the order confirms the sale to Tobin for five thousand five hundred dollars, and directs the administratrix to execute a deed to him upon payment of the balance of the purchase price, to wit, five thousand and fifty dollars. It is further ordered that Going pay to the administratrix, on or before February 24, 1913, the sum of two thousand three hundred dollars.

The appellants take the position that the Hotchkiss bid of
four thousand five hundred dollars was the only bid which
the court was authorized to consider, and that the sale under
that bid should have been confirmed. Section 1552 of the
Code of Civil Procedure provides that "if the proceedings
were unfair, or the sum bid disproportionate to the value, and
if it appears that a sum exceeding such bid at least ten per
cent exclusive of a new sale may be obtained, the court may
vacate the sale and direct another to be had." To justify
an order vacating the sale under this provision, it is not only
necessary that it appear that a sum exceeding the bid by ten
per cent may be obtained, but it must also appear that "the
proceedings were unfair" or that the "sum bid was dispro-
portionate to the value." (*Estate of Leonis,* 138 Cal. 194,
[71 Pac. 171]; *Estate of Robinson,* 142 Cal. 152, [75 Pac.
777].) It is argued that the requirement of unfairness or
disproportion must also be met to authorize the court to accept
an increased offer of ten per cent under the final sentence of
section 1552. It is there provided that "If an offer of ten
per cent more in amount than that named in the return be
made to the court, in writing, by a responsible person, it is
in the discretion of the court to accept such offer and confirm
the sale to such person, or to order a new sale." But no
such condition is stated in this part of the statute, and we see
no sufficient reason for reading it in. That the increased
offer, to the amount stated, is all that is needed to justify the
court in confirming the sale to the higher bidder or ordering
a new sale, was clearly intimated in *Griffin* v. *Warner,* 48
Cal. 383, where the court was considering a section of the
Practice Act, substantially similar to section 1552 of the Code
of Civil Procedure, and the construction contended for by
appellants was distinctly repudiated in *Estate of Reed,* 3 Cal.
App. 144, [85 Pac. 155], a case which this court declined to
rehear after judgment in the district court of appeal.

We think, however, that the appellants are right in their
contention that the bid of Tobin was not one which the court
was authorized to accept. The order of sale authorized the
administratrix to sell for "cash, in gold coin of the United
States, ten per cent of the purchase price to be paid . . . at
the time the bid therefor is accepted; the balance . . . to be
paid upon confirmation of the sale." Tobin's offer declared
upon its face that it was made upon the "assurance" that

the money paid by him to Going should be refunded and that
one-half of the purchase price, or two thousand seven hundred
and fifty dollars, was not to be paid until it had been returned
to him.    This was, in effect, a condition attached to the offer.
Such condition deprived the offer of the absolute character
which the terms of the order of sale, and the nature of the
transaction, required.    Tobin did not undertake to pay the
entire purchase price except upon an event which might or
might not take place.    The probate law contemplates a con-
tract which the buyer may be compelled to complete.    Tobin
did not agree to enter into any such contract.    It is true that
the order of confirmation in the clause confirming the sale
and directing a conveyance, makes no reference to the condi-
tion embraced in the offer.    But the order recites the offer,
and rests upon it.    The further provision directing Going
to pay two thousand three hundred dollars to the adminis-
tratrix, serves to explain the failure to insert in the order the
condition attached to Tobin's bid.    It was probably expected
that this payment would be made and that Tobin would
receive credit for it as a part payment of the purchase price.
But, as will hereafter be pointed out, this part of the order
cannot stand.    Under these circumstances, it would mani-
festly be unjust to the purchaser to hold him to an absolute
agreement, even though he is not here complaining of the
form of the order.    Furthermore, the appellant Hotchkiss, as
the original bidder, has the clear right to object that the higher
bid, which alone could authorize confirmation of the sale to
another, was not made.

There is no legal foundation for the order requiring Going
to pay two thousand three hundred dollars to the adminis-
tratrix.    This constituted a judgment against Going, and it
was rendered in a proceeding to which he was not made a
party, and without any pleadings presenting the issue of his
indebtedness to the estate.    That a valid judgment cannot be
given under such circumstances is too elementary to require
the citation of authority.

The order appealed from must, accordingly, be reversed.
We do not, however, agree with the contention of the appel-
lants that the court below should be directed to confirm the
sale to Hotchkiss for four thousand five hundred dollars.
The refusal to confirm that sale was based on the ground that
a written offer of ten per cent more had been made to the

court—a ground which was, as we have seen, untenable. The sale could therefore have been vacated, under the first part of section 1552, only upon a showing that unfairness or disproportion of price concurred with the probability that a price, higher by ten per cent, could be obtained on a new sale. While the order finds both unfairness of proceedings and disproportion of price, it does not find that the higher price could be obtained. We have no doubt, however, that the evidence would have warranted such a finding. The transaction between Going and Tobin, together with the latter's testimony at the trial, were sufficient in this regard. It is altogether probable that the court omitted any finding on the subject because, in view of the acceptance by it of Tobin's offer, the question was deemed immaterial, as, in fact, it would have been if Tobin's offer had been in proper form. Under these circumstances, we would not be justified in assuming that the court below actually concluded that ten per cent more could not be obtained on a new sale. The entire matter of the sale should be remanded for such further order as may seem just, in the light of what has been here said and of such additional facts as may be presented. As an aid in the further proceedings, which are to follow, it may be well to notice the claim of the appellants that the evidence fails to support the findings of unfairness and disproportion of value. We may concede, for the purposes of this discussion, that the evidence was not such as to justify the finding that the sum bid by Hotchkiss was disproportionate to the value of the property. There is no need to go into this, as direct evidence on the point, one way or the other, may readily be supplied at another hearing. The court was, however, we think, fully warranted in concluding and finding that the proceedings leading up to the sale to Hotchkiss had been unfair. Hotchkiss was acting under the direction and in the interest of Going, and is affected by any circumstances affecting Going's *status* in the transaction. The appellants complain of the recitals that Going acted as agent for the heirs and estate of Bradley, as well as for Tobin. Whatever may have been his relationship to Tobin, he was properly regarded as occupying the position of agent for the estate and those interested in it. He had sought and obtained the "listing" of the property by one of the heirs, and had had this action approved by the administratrix. He had, thereafter, taken a deposit from

Tobin on a sale to the latter for five thousand five hundred dollars, describing himself in the contract and receipt as agent, and making the sale subject to the approval of the owner. Thereupon, he had notified the administratrix that he could get four thousand five hundred dollars for the property. In communicating with the administratrix, he impliedly requested her to ratify a sale which he, as agent for the estate or the heirs, had made, or to authorize him to make a sale. That this was the administratrix's understanding of the situation is shown by the return, in which she states that the bid of Hotchkiss was ''made through the real estate firm of James W. Going,'' and that a commission would be due to Going. No commission had in fact been agreed upon. Going was attempting to secure, as his compensation, the difference between the five thousand five hundred dollars offered by Tobin, and the four thousand five hundred dollars named in the Hotchkiss bid. We do not suggest that there would have been any impropriety in this effort, if the facts had been made known to the parties in interest. But certainly a real estate agent, seeking the authorization of an owner to sell property, or the ratification of a sale already made without authority, is bound to disclose the price actually received or to be received by him on a sale. He has not the right, after making a sale for a given price, to represent that price to be smaller than it is, or to secretly purchase the property himself at a smaller price, in order to make the profit of a resale at the price which he might and should have secured for his principal. The latter course of dealing, which is the one pursued by Going in this case, is in violation of the fundamental rule prohibiting an agent or trustee, in matters connected with the agency or trust, from obtaining any advantage therein over his principal or beneficiary by the ''slightest misrepresentation or concealment.'' (Civ. Code, secs. 2228, 2322; *Calmon* v. *Sarraille*, 142 Cal. 638, [76 Pac. 486].) A sale, induced by such proceedings, is tainted with ''unfairness'' within the meaning of sections 1552 and 1554 of the Code of Civil Procedure.

The order is reversed, with directions to the court below to take further proceedings not inconsistent with this opinion.

Shaw, J., and Angellotti, J., concurred.