9 Cal.App.4th 1197 (1992)
12 Cal. Rptr.2d 50
In re PACIFIC STANDARD LIFE INSURANCE COMPANY in Conservation of Assets.
JOHN GARAMENDI, as Insurance Commissioner, etc., Respondent,
v.
LIFE OF AMERICA INSURANCE COMPANY, Appellant.
Docket No. C012977.
Court of Appeals of California, Third District.
September 22, 1992.
*1198 COUNSEL
Adams, Duque & Hazeltine, Sidney W. Bishop, Jeffrey L. Fillerup, Lynne K. Dombrowski and Susan M. Hogan for Appellant.
Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Timothy G. Laddish, Assistant Attorney General, James B. Cuneo, Lawrence K. Keethe and Steven J. Green, Deputy Attorneys General, and John D. Schell, Acting Deputy Attorney General, for Defendant and Respondent.
OPINION
NICHOLSON, J.
After the superior court appointed the Insurance Commissioner as conservator of a financially troubled insurance company, Life of America Insurance Company (LOA) offered to buy a major asset of the *1199 conservatorship estate. However, the court instead authorized sale of the asset to another buyer on terms more profitable to the estate than LOA's offer.
This purported appeal by LOA is dismissed because LOA is not an aggrieved party.

FACTS AND PROCEDURAL HISTORY
On December 11, 1989, the superior court appointed the Insurance Commissioner as conservator of Pacific Standard Life Insurance Company (Pacific Standard) because of its distressed financial condition. According to an examination of Pacific Standard's records, its liabilities exceeded its assets by more than $41 million.
On September 16, 1991, LOA sent a letter to the manager of the conservatorship, an employee of the Insurance Commissioner, offering to buy Pacific Standard's Texas subsidiary, Pacific Standard Life of Texas (Pacific Texas). LOA offered to pay 3.5 percent of the statutory reserves of Pacific Texas plus the amount of its statutory capital and surplus, resulting in a purchase price of more than $6 million.
The letter stated: "The details of these transactions and this offer [are], of course, conditioned upon and subject to the negotiation and execution of a written agreement of purchase and sale between the parties...." It also provided: "[T]his offer represents only the present intention of the parties as a preliminary agreement in principle, and is intended to be superseded by and merged into a subsequent definitive written agreement to be negotiated by the parties, and before which there shall be no binding agreement except to the extent set forth in paragraphs 1, 2, 3 and 4 above which the parties agree will be binding on them from and after the date Seller accepts this proposal." Paragraphs 1, 3, and 4 gave LOA access to the books of Pacific Texas, authorized Pacific Texas to continue its ordinary business, and made each party responsible for its own expenses incurred in the sale. Paragraph 2 stated: "Neither Seller nor anyone acting on Seller's behalf will enter into or pursue negotiations with any other party with respect to the sale of the Stock or the business or assets of [Pacific Texas]." The manager of the conservatorship signed LOA's letter signifying his acceptance and agreement to its terms.
On October 7, 1991, the Insurance Commissioner, as Pacific Standard's conservator, petitioned the superior court for an order authorizing him to sell Pacific Texas to LOA on the terms contained in LOA's letter. (Ins. Code, *1200 § 1037, subd. (d).) He also served copies of the petition on those who had previously expressed an interest in buying Pacific Texas. Two companies, Western Reinsurance Company of San Antonio (Western Reinsurance) and Central Security Life Insurance Company of Richardson (Central Security), responded with a joint offer more favorable to Pacific Standard. The amount of the joint offer was computed the same as LOA's offer except that Western Reinsurance and Central Security would pay 4.6 percent of the statutory reserves of Pacific Texas, as opposed to LOA's offer to pay 3.5 percent of those reserves. The Insurance Commissioner presented the second offer to the superior court on November 14, 1991.
LOA objected to the court's consideration of the second offer, claiming presentation of the second offer breached or interfered with LOA's letter to the manager for the conservator. However, the superior court overruled LOA's objection and authorized the sale of Pacific Texas to Western Reinsurance and Central Security on the terms set forth in their offer. LOA's notice of appeal designates both the overruling of the objection and the authorization of sale.

DISCUSSION
(1a) "Any party aggrieved may appeal...." (Code Civ. Proc., § 902.) "The rule is strictly applied by reviewing courts which hold generally that only aggrieved parties may appeal." (Kunza v. Gaskell (1979) 91 Cal. App.3d 201, 206 [154 Cal. Rptr. 101], italics in original.)
(2a) LOA had no interest in the sale of Pacific Texas because it was outbid by Western Reinsurance and Central Security. (Estate of Cahoon (1980) 101 Cal. App.3d 434, 437 [161 Cal. Rptr. 651].) In Cahoon, Van Dyck filed a bid to be considered in the confirmation hearing for the sale of probate estate property. Another outbid him, and the superior court confirmed the sale to the higher bidder. When Van Dyck attempted to appeal the confirmation of the sale, the appellate court stated: "[Van Dyck] is demonstrably not an aggrieved party. On the day of his first appearance in the action, ... when he filed an increased bid in the confirmation hearing and was outbid, [Van Dyck] had, at best, a prospective interest in the subject sale. Upon being outbid, his interest in the proceedings terminated." (101 Cal. App.3d at p. 437, italics in original.)
Here, the Insurance Commissioner had no legal authority to conclude a contract to sell Pacific Texas without the court's approval. "[N]o transaction involving real or personal property shall be made where the market value of the property involved exceeds the sum of twenty thousand dollars ($20,000) *1201 without first obtaining permission of the court, and then only in accordance with any terms that court may prescribe." (Ins. Code, § 1037, subd. (d).)
LOA contends its letter signed by the manager of the conservatorship makes it an aggrieved party. (1b) However, "[a]n `aggrieved party' is one having an interest in the subject matter recognizable by law, and injuriously affected by the judgment or order." (Cahoon, supra, 101 Cal. App.3d at p. 437, italics added.) "One is considered aggrieved whose rights or interests are injuriously affected by the judgment. Appellant's interest must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." (County of Alameda v. Carleson (1971) 5 Cal.3d 730, 737 [97 Cal. Rptr. 385, 488 P.2d 953], citations and quotations marks omitted.)
(2b) Insurance Code section 1037, subdivision (d), prohibits any transaction involving property worth more than $20,000 in the conservatorship estate without court approval and under the terms the court sets. This and the other sections of the Insurance Code dealing with insolvency and the Insurance Commissioner's authority to step in as conservator were enacted to protect the public. (See Financial Indem. Co. v. Superior Court (1955) 45 Cal.2d 395, 401 [289 P.2d 233].) Moreover, "a law established for a public reason cannot be contravened by a private agreement." (Civ. Code, § 3513.)
In other words, even if LOA's letter were construed as, in form, a contract of sale, it would create no legally cognizable interest. LOA could not achieve by contract that which is expressly prohibited by statute. Only by express judicial authorization and prescription of sales terms may a legally cognizable interest be created in any potential buyer in this statutory context. LOA never attained that status and was no more than an offeror. Applying the reasoning of Cahoon, any prospective interest LOA achieved was terminated by the court's authorization of sale to Western Reinsurance and Central Security on their higher bid. (Cahoon, supra, 101 Cal. App.3d at p. 437.)
The proceedings from which LOA purports to appeal were initiated by the Insurance Commissioner as part of his ongoing conservatorship of Pacific Standard. As conservator, the commissioner acts as a minister of the superior court in its statutory responsibility to protect the public interest and conserve the rights of the creditors and policyholders of the conservatee. (Garris v. Carpenter (1939) 33 Cal. App.2d 649, 654-655 [92 P.2d 688].) However, the commissioner's ministerial authority does not extend to sale of assets worth more than $20,000 absent the court's authorization of the sale and its terms. The superior court holds the exclusive authority in this context. (Ins. Code, *1202 § 1037, subd. (d).) The Insurance Commissioner and a potential purchaser may not subvert the superior court's statutory authority by agreeing the court may only consider one offer when there are more than one. Indeed, had there been but a single offer, the court could have, in any event, rejected it.
Moreover, LOA's letter was, at best, an agreement to agree. LOA and the Insurance Commissioner agreed the sale of Pacific Texas was "conditioned upon and subject to the negotiation and execution of a written agreement of purchase and sale." This agreement to agree conferred upon LOA no interest in the sale of Pacific Texas because it was conditioned upon a later agreement the parties never reached. (See Beck v. American Health Group Internat., Inc. (1989) 211 Cal. App.3d 1555, 1562 [260 Cal. Rptr. 237].) Without judicial action, they could not create a binding contract. The requirement of judicial authorization and prescription of terms fatally attenuated whatever interest, whether present or prospective, LOA claimed to have in the purchase of Pacific Texas. Therefore, LOA's claim of an interest sufficient to cause it to be aggrieved by the superior court's actions is both contractually and statutorily unfounded.
In Estate of Bradley (1914) 168 Cal. 655 [144 P. 136], the superior court authorized the sale of real property of the probate estate at a private sale. The administratrix sold the property and made her return to the court for confirmation of the sale. Another party made a higher bid to the court, and the court ordered confirmation of the sale to the higher bidder. The original purchaser appealed the confirmation of the sale to the higher bidder, but the administratrix argued he was not an aggrieved party. (Id. at p. 657.) The Bradley court concluded: "The order confirming the sale to [the higher bidder] was, in effect, a refusal to confirm the reported sale to [the original purchaser]. The latter, therefore, is undoubtedly an aggrieved party, and he has the right to appeal. [Citations.]" (168 Cal. at p. 657.) The original purchaser acquired rights to the subject property through a binding executory contract previously authorized by the probate court. (See Cahoon, supra, 101 Cal. App.3d at pp. 437-438.) Here, unlike the facts in Bradley, the court made no prior authorization and, therefore, the parties had no authority to enter into a binding contract of sale.
In overruling LOA's objection to the consideration of the second offer, the superior court also ruled that, contrary to LOA's claim, the second offer did not show a breach of or tortious interference with the purported contract between LOA and the Insurance Commissioner. While "[a] party who would be bound by the doctrine of res judicata, ... is a party sufficiently aggrieved to assert appellate rights" (Life v. County of Los Angeles (1990) 218 Cal. App.3d 1287, 1292 [267 Cal. Rptr. 557]), the superior court's order *1203 authorizing sale of Pacific Texas to Western Reinsurance and Central Security has no res judicata effect on LOA. Res judicata only applies to those issues necessary to the judgment. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 268, p. 710.)
The validity of LOA's claim the second offer breached or tortiously interfered with its purported contract had no bearing on the matter at hand, i.e., prescription of terms for and authorization of the sale. The superior court's authority was unconstrained by any purported contract between LOA and the Insurance Commissioner. LOA may not create a right to appeal from the court's exercise of express statutory authority by complaining about a superfluous ruling on an issue it raised which could have no effect on the outcome of the proceedings.
Nor did LOA become an aggrieved party with the right to appeal by objecting to judicial consideration of the offer of Western Reinsurance and Central Security. Whatever the relationship between the Insurance Commissioner and LOA, it was not binding on the court and could not prevent the court from fulfilling its duty to protect the public interest. Consequently, the objection is not cognizable here. The sole statutory focus of these proceedings was to set the terms of the sale of Pacific Texas and authorize sale on those terms. LOA's only possible role or interest was to make an offer for Pacific Texas. That role or interest ended with the court's authorization to sell Pacific Texas to another suitor. (Estate of Cahoon, supra, 101 Cal. App.3d at p. 437.) Having no immediate, pecuniary, and substantial interest that was injured, LOA has no standing to appeal. (County of Alameda v. Carleson, supra, 5 Cal.3d at p. 737.)
Because LOA is not an aggrieved party, we need not decide whether the actions of the superior court are appealable. (See In re Glacier General Ins. Co. (1991) 234 Cal. App.3d 1549, 1553-1554 [286 Cal. Rptr. 262].) We also decline to treat the defective appeal as a petition for an extraordinary writ. (See Lemaire v. All City Employees Assn. (1973) 35 Cal. App.3d 106, 110-111 [110 Cal. Rptr. 507].)
LOA and the Insurance Commissioner request us to take judicial notice of pleadings in related suits. Since those proceedings are not relevant to our determination LOA is not aggrieved, we deny the requests for judicial notice. The Insurance Commissioner also seeks sanctions against LOA for a frivolous appeal. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a).) He bases this motion on the assertion counsel notified LOA the orders are not appealable. (See In re Glacier General Ins. Co., supra, 234 Cal. App.3d at pp. 1553-1554.) We, instead, find LOA is not aggrieved. Even though LOA *1204 does not prevail, we conclude its arguments are not "`totally and completely devoid of merit....'" (In re Marriage of Flaherty (1982) 31 Cal.3d 637, 651 [183 Cal. Rptr. 508, 646 P.2d 179].)

DISPOSITION
The appeal is dismissed. The requests for judicial notice and motion for sanctions are denied.
Puglia, P.J., and Scotland, J., concurred.