Filed 12/12/22 Conservatorship and Estate of Barenchi CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| Conservatorship of the Person and Estate of DORIS E. BARENCHI, Deceased. | B303810 |
| DARA L. MOORE et al., Petitioners and Respondents, v. DENISHA PARKER, Objector and Appellant. | (Los Angeles County Super. Ct. No. 16STPB00842) |
| Estate of DORIS E. BARENCHI, Deceased. | B304774 |
| AMY NOEL, as Administrator, etc., Petitioner and Respondent, v. DENISHA PARKER, Objector and Appellant. | (Los Angeles County Super. Ct. No. 20STPB00968) |

APPEALS from orders of the Superior Court of
Los Angeles County, David J. Cowan and Gus T. May,

Judges.  Trust revocation order affirmed.  Fee order and appointment order dismissed.

Denisha Parker, in pro. per., for Objector and Appellant.

Ross Law Group and Mark A. Ross, for Petitioner and Respondent Dara L. Moore.

Velasco Law Group, Richard J. Radcliffe and Peter A. Sahin, for Petitioner and Respondent Amy L. Noel.

No appearance by Petitioner and Respondent the Los Angeles County Office of the Public Guardian.

_____

## INTRODUCTION

These consolidated appeals arise from cases concerning the temporary conservatorship of Doris Elaine Barenchi and, following her death, the administration of her estate.  In late 2015, while in a rehabilitation facility recovering from an illness, 92-year-old Barenchi met appellant Denisha Parker.  Several months later, Barenchi executed and transferred her property into the Doris Elaine Barenchi Living Trust (the Trust), which named Parker and Barenchi as co-trustees and provided for Parker to receive the trust estate upon Barenchi's death.  One month later, at the request of Los Angeles County Adult Protective Services (APS), Diana C. Homeier, M.D., evaluated Barenchi and opined she needed a conservator because she lacked the cognitive capacity to make medical and financial decisions and was at very high risk of undue influence.  Later that year, on petition by

2

Barenchi's niece, respondent Dara Moore, the probate court appointed professional fiduciaries as temporary conservators of Barenchi's estate.

In 2019, the court appointed respondent Los Angeles County Office of the Public Guardian (the Public Guardian) as the new temporary conservator of both Barenchi's estate and her person. Soon after, the Public Guardian petitioned to revoke the Trust under the substituted judgment doctrine, relying on Dr. Homeier's evaluation and other evidence that Barenchi lacked testamentary capacity and had been unduly influenced by Parker. Barenchi opposed the petition (through her court-appointed counsel), as did Parker, who presented oral argument in propria persona at the hearing. The court granted the petition to revoke the Trust, finding that Barenchi lacked capacity to revoke it herself, and that revocation would benefit Barenchi by, inter alia, preventing her estate from passing to Parker, who had subjected her to undue influence and elder abuse. Parker appealed the revocation order.

In October 2019, Barenchi died intestate, and Moore petitioned to recover attorney fees from Barenchi's estate under Probate Code section 2640.1, on the ground that she had successfully petitioned for the appointment of temporary conservators to the benefit of Barenchi and her estate.[1] The court heard and granted Moore's unopposed fee petition. Parker appealed the fee order.

---

[1] Undesignated statutory references are to the Probate Code.

In January 2020, Barenchi's granddaughter, respondent Amy L. Noel, petitioned the court for appointment as administrator of Barenchi's estate. The court heard and granted Noel's unopposed petition. Parker appealed the appointment order.

In her consolidated appeals, Parker contends the court erred in revoking the Trust, awarding Moore attorney fees, and appointing Noel as administrator of Barenchi's estate. In response, Moore and Noel contend that Parker lacks standing to maintain her appeals because she was neither aggrieved by the orders nor a party of record, and that in any event, she fails to demonstrate error on the merits. The Public Guardian has declined to appear.

We conclude that although Parker has standing to appeal the revocation order as an aggrieved beneficiary and active participant in the conservatorship case, the court acted within its discretion in revoking the Trust on the basis of the information before it, including Dr. Homeier's opinion that a mere month after the Trust's execution, Barenchi lacked testamentary capacity and was at very high risk of undue influence. Accordingly, we affirm the revocation order. We further conclude that in the wake of the Trust's revocation, Parker lacked any cognizable interest in Barenchi's estate and thus was not aggrieved by the court's orders awarding Moore attorney fees from the estate and appointing Noel as administrator thereof. Because Parker lacks standing to maintain her appeals from the fee and

4

appointment orders, we dismiss the appeals from those orders.

**PROCEEDINGS BELOW**
### A. Barenchi's Temporary Conservatorship and Evidence of Incapacity

In late 2015, 92-year-old Barenchi was hospitalized for dehydration and then transferred to a rehabilitation facility, where she met Parker, the daughter of a fellow patient. On May 3, 2016, Barenchi executed the Trust, designating Parker as Barenchi's co-trustee and providing that Parker would receive the trust estate upon Barenchi's death. The next day, Barenchi executed a grant deed transferring her home in Lakewood into the trust estate.

Later in May 2016, Moore (Barenchi's niece) filed a petition for appointment of professional fiduciaries as conservators of Barenchi's person and estate, followed soon after by a petition for the fiduciaries' temporary appointment pending the probate court's decision. Moore alleged, inter alia, that Parker had isolated Barenchi from friends and neighbors who previously had assisted her in her affairs, and unduly influenced Barenchi to execute the Trust and engage in other transactions. In a supporting declaration, a neighbor attested that after Parker obstructed his efforts to continue assisting Barenchi, he made a report to APS.

On June 2, one month after Barenchi executed the Trust, physician Diana C. Homeier, M.D. evaluated Barenchi's cognitive status at the request of APS. In a

detailed capacity declaration, Dr. Homeier opined that Barenchi had dementia and lacked the capacity to give informed consent to any form of medical treatment. She further opined that Barenchi was "at very high risk for undue influence" and needed a conservator "to protect her assets as well as make proper decisions to protect her person." During the evaluation, Barenchi identified "Dr. Chaudry" as her personal doctor and denied that she had changed her doctor or intended to do so, but an APS worker reported that Parker had changed Barenchi's doctor to Suzanne L. Fussell, M.D.[2]

In July 2016, on the recommendation of Barenchi's appointed counsel Christopher Bury, the court (Judge William Barry) granted Moore's petition to appoint fiduciaries as temporary conservators of Barenchi's estate.[3]

---

[2] One week later (on June 8, 2016), Parker transported Barenchi from Lakewood to Long Beach to be evaluated by Dr. Fussell. In a form capacity declaration, which Parker filed with the court, Dr. Fussell opined that Barenchi had the capacity to give informed consent to medical treatment, without describing her evaluation or otherwise explaining the basis of her opinion. Dr. Fussell's declaration was expressly "limited to medical consent capacity" and did not purport to address Barenchi's testamentary capacity.

[3] At an October 2016 hearing attended by Parker, the court (then-Commissioner Brenda Penny) granted Bury's request to be relieved as Barenchi's counsel due to an unspecified conflict of interest. At Parker's request, the court allowed Barenchi to read a lengthy letter into the record; at one point Barenchi indicated
*(Fn. is continued on the next page.)*

As the conservatorship case progressed, Barenchi's appointed counsel was replaced several times, until the court (Judge David J. Cowan) finally appointed attorney John Gordon in January 2018. In July 2018, Gordon filed Barenchi's opposition to Moore's conservatorship petition. By this time, Parker had moved Barenchi from Barenchi's Lakewood home into Parker's small apartment in Long Beach, where Barenchi was reported by a probate investigator to be living in cramped and substandard conditions.

In November 2018, mental evaluator Gary Freedman-Harvey, Ph.D., evaluated Barenchi and executed a capacity declaration, which was filed with the court. Freedman-Harvey opined -- as Dr. Homeier had opined two years earlier -- that Barenchi had dementia and lacked the capacity to give informed consent to any form of medical treatment. He reported, inter alia, that Barenchi was "almost too cognitively impaired to evaluate."

### B. Revocation of the Trust

---

she had read the entire letter, but Bury advised the court that the letter contained an additional page, prompting Barenchi to remark, "Oh, good Lord. [¶] . . . [¶] I have to read this too?" The letter stated, inter alia, that Parker had never unduly influenced Barenchi and that Barenchi did not want the Trust to be changed.

In February 2019, on petition by the Public Guardian, the court appointed the Public Guardian as the new temporary conservator of Barenchi's person and estate. Soon after, the court authorized the Public Guardian to move Barenchi back into her home (which was reportedly in disrepair) when it was suitable.

In May 2019, the Public Guardian filed a petition to revoke the Trust under the substituted judgment doctrine.[4] The Public Guardian argued the Trust should be revoked because: (1) Barenchi had lacked capacity at the time she executed the Trust; (2) Barenchi presently lacked capacity to continue serving as co-trustee; (3) Parker should not be allowed to remain a trust beneficiary "as a suspected financial abuser"; and (4) Parker had subjected Barenchi to undue influence. The Public Guardian relied, inter alia, on Dr. Homeier's June 2016 capacity declaration indicating that a mere month after the Trust's execution, Barenchi lacked capacity to make financial decisions and was at very high risk of undue influence. The Public Guardian also alleged

---

[4] The Trust was expressly revocable during Barenchi's lifetime by Barenchi herself or, with court approval, by a conservator. Under the substituted judgment doctrine, codified at section 2580 et seq., a conservator may petition the court for authority to exercise the conservatee's right to revoke a revocable trust (or to take other proposed action) for the purpose, inter alia, of benefiting the conservatee or the estate. (§ 2580, subds. (a)(1), (b)(11); *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 394 (*Murphy*).)

that during a November 2018 interview, Barenchi denied having executed any trust naming Parker as the beneficiary "and stated in disbelief 'why would I give away my stuff?'"

In opposition, Barenchi (through attorney Gordon) argued the Trust's revocation would not benefit Barenchi or her estate, and instead would improperly contradict her wish to leave her estate to Parker. In reply, the Public Guardian argued revocation would allow it to obtain a reverse mortgage to pay for 24-hour in-home care for Barenchi, as necessary to move her from Parker's apartment back into her own house. Parker filed no papers.

In July 2019, the court held a hearing on the revocation petition, at which all named parties and Parker appeared. The court announced a tentative ruling granting the petition: "The court finds that given Dr. Homeier's findings, based on the prior testimony at earlier hearings in this case, including the establishment of the conservatorship at an earlier hearing . . . , and the court's observations about Ms. Barenchi's cognitive abilities at this time, the APS investigation, the Public Guardian's reports, and Ms. Parker's testimony at an earlier hearing [all] lead[] the court to conclude that . . . this trust should be set aside, and that the court is concerned about whether it constitutes elder abuse. [¶] There's been no evidence to rebut the presumption of undue influence.[5] Even without the

_____

[5]     The court appeared to refer to the presumption of undue influence that arises where a trust beneficiary actively
*(Fn. is continued on the next page.)*

9

presumption, there's evidence to -- it's not contradicted -- relating to her . . . susceptibility to undue influence. The court does believe it's part of the conservator's job to make sure that when ultimately Ms. Barenchi does pass, there's not a document that effectively would not be her wishes." The court added that the transfer of Barenchi's house into the trust estate appeared to be "wrongdoing," and that revocation of the trust would benefit Barenchi "in terms of her ability to get a mortgage, and for getting the house back in order, [as] the court previously indicated was appropriate . . . ." The court acknowledged the relevance of Barenchi's opposition to the petition (through attorney Gordon) but found her opposition outweighed by the other evidence it had considered.

Gordon argued that instead of petitioning to revoke the Trust, the Public Guardian should have petitioned merely to substitute itself as the trustee, in which capacity it assertedly could have obtained a reverse mortgage. The court responded that it did not believe substitution of the trustee would be sufficient to protect Barenchi's interests because it would not prevent the "seeming travesty" of Parker receiving Barenchi's house upon her death. However, the court encouraged the Public Guardian to petition for substituted judgment to establish a new estate

---

participated in the trust's execution while in a confidential relationship with the settlor. (See *Bernard v. Foley* (2006) 39 Cal.4th 794, 800.)

plan which might, if appropriate, provide for Parker to receive some lesser portion of Barenchi's estate.

Gordon further argued there was insufficient evidence that at the time of the Trust's execution, Barenchi lacked capacity or was subject to undue influence. The court observed that Gordon's written opposition had neither presented evidence regarding Barenchi's capacity nor requested an evidentiary hearing. In response, Gordon orally requested an evidentiary hearing. The court observed that granting the request would force Barenchi to incur additional expense, and asked Gordon to identify a reasonable basis for believing his position would prevail after an evidentiary hearing. The court noted it was "not trying to discourage" Gordon from requesting an evidentiary hearing, adding, "So it's your call. I'll do whatever you want." Abandoning his request, Gordon responded that because he believed Barenchi's opposition to the petition "would be a losing argument," he declined to "spend her money unnecessarily."

With the court's permission, Parker presented oral argument (in propria persona) in opposition to the revocation petition. Parker argued, inter alia, that the court was acting on "prejudgment" in finding that her receipt of the trust estate would be contrary to Barenchi's interests. The court denied that it had prejudged the issue, assuring Parker that it had made its finding on the basis of the evidence and

arguments presented -- including by Parker herself -- during the preceding years of litigation and the instant hearing.[6]

At the conclusion of the hearing, the court granted the petition, revoking the Trust and authorizing the transfer of all trust assets back into Barenchi's name. Parker timely appealed the revocation order.

### C. Barenchi's Death and Orders Concerning Her Estate

Four months later, in October 2019, Barenchi died intestate.[7] That same month, Moore filed a petition to recover approximately $95,000 in attorney fees from Barenchi's estate under section 2640.1, on the ground that although the Public Guardian was not the particular conservator Moore had sought, she had successfully petitioned for the appointment of temporary conservators to the benefit of Barenchi and her estate.[8] No opposition was

---

[6] As Moore and Noel acknowledge on appeal, Parker was present at "most" hearings in the conservatorship case.

[7] The court subsequently denied as moot Moore's petition for a permanent conservatorship.

[8] "If a person has petitioned for the appointment of a particular conservator and another conservator was appointed while the petition was pending, . . . the person who petitioned for the appointment of a conservator but was not appointed and that person's attorney may petition the court for an order fixing and allowing compensation and reimbursement of costs, provided that the court determines that the petition was filed in the best
*(Fn. is continued on the next page.)*

filed or made orally at the hearing. In January 2020, the court granted the unopposed petition, awarding the full amount of requested fees. Parker appealed the fee order.

That same month, respondent Noel (Barenchi's granddaughter) petitioned the court to appoint her administrator of Barenchi's estate. Noel alleged she was entitled to the appointment because Barenchi had died intestate and without any surviving spouse or children. (See § 8461 ["a person in the following relation to the decedent is entitled to appointment as administrator in the following order of priority: [¶] (a) Surviving spouse or domestic partner . . . . [¶] (b) Children. [¶] (c) Grandchildren"].) No opposition was filed or made orally at the hearing. In March 2020, the court (Judge Gus T. May) issued a minute order granting the unopposed petition. The next day, Parker appealed the minute order.[9]

---

interests of the conservatee." (§ 2640.1, subd. (a).) "Any compensation and costs allowed shall be charged to the estate of the conservatee." (§ 2640.1, subd. (c)(2).)

[9] After noticing her appeal, Parker filed a motion to set aside the order appointing Noel as administrator. In June 2020, after a hearing at which Parker was represented by counsel, the court denied the motion on the grounds, inter alia, that Parker effectively requested relief under section 473, subdivision (b) or section 473.5, subdivision (b) of the Code of Civil Procedure, but failed to satisfy each statute's requirement to attach a copy of a proposed pleading.

We grant Parker's motion to augment the record with the transcript of this hearing. We deny Parker's request for judicial
*(Fn. is continued on the next page.)*

## DISCUSSION

Parker contends the probate court erred in revoking the Trust, awarding Moore attorney fees, and appointing Noel as administrator of Barenchi's estate. Moore and Noel respond that Parker lacks standing to maintain her appeals because she was neither aggrieved by the orders nor a party of record, and that in any event, she fails to demonstrate error on the merits.[10]

### A. Order Revoking the Trust

We conclude that although Parker has standing to appeal the probate court's order revoking the Trust, she fails to show the court abused its discretion.

#### 1. Standing

"[A]n appeal may be taken only by those who have standing to appeal. The standing requirement is jurisdictional." (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 2-D ¶ 2:270, italics omitted.)

---

notice of irrelevant materials. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2022) Ch. 5-B ¶ 5:156.2 ["Appellate courts will not take judicial notice of matters *irrelevant* to the dispositive point on appeal"].)

[10] Exercising our discretion to overlook any deficient citations to the record, we reject Moore's and Noel's arguments that we should disregard Parker's opening brief, as well as Parker's argument that we should disregard portions of Moore's respondent's brief.

"Code of Civil Procedure section 902 allows '[a]ny party aggrieved' to appeal from a judgment.  Thus, '[t]he test is twofold -- one must be both a party of record to the action and aggrieved to have standing to appeal.'" (*Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, 970 (*Turrieta*), review granted Jan. 5, 2022, S271721.)  However, "[t]he 'party' status requirement is more leniently applied in some probate proceedings to confer appellate standing on certain nonparty estate beneficiaries (i.e., beneficiaries who did not participate in the probate proceeding): Provided the beneficiaries are legally 'aggrieved' by the probate court judgment or order, they can appeal despite the technical lack of 'party' status."  (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 2-D ¶ 2:278.)  Moreover, as a remedial statute, Code of Civil Procedure section 902 "'should be liberally construed, with any doubts resolved in favor of the right to appeal.'"  (*Id.* at ¶ 2:283a, quoting *Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540.)

We conclude Parker has standing to appeal the order revoking the Trust.  Parker was aggrieved by the order because the Trust's revocation terminated her status as co-trustee and sole beneficiary of the trust estate.  Her status as an aggrieved beneficiary alone may support standing "despite [her] technical lack of 'party' status," as courts have recognized aggrieved beneficiaries' standing even where they "did not participate in the probate proceeding."  (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch.

15

2-D ¶ 2:278; see also *Estate of Zabriskie* (1979) 96 Cal.App.3d 571, 575 [alternate beneficiary under decedent's will had standing to appeal order distributing estate, despite alternate beneficiary's failure to appear in probate court].)[11] Moreover, Parker *did* participate in the proceeding. As Moore and Noel acknowledge, Parker filed Dr. Fussell's capacity declaration and was present at "most" hearings in the conservatorship case. At the revocation hearing, the court not only granted Parker permission to present oral argument but also relied on its recollection of information she had presented at prior hearings. Liberally construing Code of Civil Procedure section 902 in favor of the right to appeal (see *Ajida Technologies, Inc. v. Roos Instruments, Inc., supra,* 87 Cal.App.4th at 540), we conclude Parker has standing to appeal the revocation order.[12]

---

[11] Moore and Noel fail to address this authority, which contradicts their argument that Parker lacks standing to appeal merely because she failed to file a written opposition to the revocation petition.

[12] We reject Parker's contention that as a general rule, "[n]onparties who are aggrieved by a judgment may appeal from it." *In re FairWageLaw* (2009) 176 Cal.App.4th 279, 285, on which Parker relies, failed to address *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, in which our Supreme Court applied the contrary rule that "only parties of record may appeal . . . ." (*Id.* at 736; accord, *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 263, 270 [unnamed class members lack standing to appeal unless they intervene and become parties of record].) "The weight of authority continues to follow *County of (Fn. is continued on the next page.)*

16

## 2. *Merits*

Parker contends the probate court abused its discretion in granting the Public Guardian's petition to revoke the Trust under the substituted judgment doctrine. We disagree.[13]

A court may grant a conservator's petition for substituted judgment if it determines the conservatee "either (1) is not opposed to the proposed action or (2) if opposed to the proposed action, lacks legal capacity for the proposed action." (§ 2582, subd. (a).) The court is not compelled to

---

*Alameda* and require party of record status, subject to . . . a more lenient approach in some probate proceedings [citation]." (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 2-D ¶ 2:271.1; see also *Estate of Zabriskie, supra*, 96 Cal.App.3d at 575.) We apply this approach in reaching our narrow conclusion that despite her lack of party status, under the unusual circumstances of this case, Parker has standing to appeal the revocation order.

[13] In her opening brief (filed in propria persona), Parker argues the revocation order is subject to de novo review "because it pertains to statutory interpretation," but cites no relevant statute or authority. Under the substituted judgment statute and caselaw, the order is subject to review for abuse of discretion. (See § 2584 ["After hearing, the court, *in its discretion*, may approve, modify and approve, or disapprove the [conservator's] proposed action" (italics added)]; *Conservatorship of McDowell* (2004) 125 Cal.App.4th 659, 665 ["We review the trial court's order granting substituted judgment for abuse of discretion"], disapproved on another ground by *Bernard v. Foley* (2006) 39 Cal.4th 794.)

hold an evidentiary hearing, but "must use its discretion in evaluating the information presented to it in order to decide if the information in the petition is sufficient, or if a full contested evidentiary hearing is required." (*Conservatorship of McElroy* (2002) 104 Cal.App.4th 536, 554; accord, *Murphy*, *supra*, 164 Cal.App.4th at 398.) In determining whether to authorize the proposed action, "the court shall take into consideration all the relevant circumstances, which may include, but are not limited to, the following: [¶] (a) Whether the conservatee has legal capacity for the proposed transaction . . . . [¶] . . . [¶] (e) The wishes of the conservatee. [¶] . . . [¶] (g) The manner in which the estate would devolve upon the conservatee's death . . . [¶] . . . [¶] (k) The likelihood from all the circumstances that the conservatee as a reasonably prudent person would take the proposed action if the conservatee had the capacity to do so. [¶] . . . [¶] [and] (m) Whether a beneficiary has committed physical abuse, neglect, false imprisonment, or financial abuse against the conservatee after the conservatee was substantially unable to manage his or her financial resources, or resist fraud or undue influence, and the conservatee's disability persisted throughout the time of the hearing on the proposed substituted judgment." (§ 2583.) "'A given set of facts may permit more than one rational substituted-judgment decision. [¶] The superior court will (as the conservatee would) obtain information, and hear applications and suggestions, from various sources, and will or should obtain a sense of the situation . . . inevitably more

18

enlightened than any reviewing court could hope to obtain. In sum the superior court, when called upon to substitute its judgment for that of the conservatee, will be "a presumptively more capable decisionmaker" and should be given broad latitude.'" (*Murphy*, *supra*, 164 Cal.App.4th at 397.)

We conclude the court acted within its broad discretion in revoking the Trust. In expressly finding that Barenchi's opposition to the revocation petition (through appointed counsel) was not dispositive, the court impliedly found that Barenchi lacked capacity to revoke the Trust herself. (See § 2582, subd. (a) [court may authorize proposed action over conservatee's opposition if conservatee "lacks legal capacity regarding the proposed action"]; cf. § 2583 [non-exhaustive list of factors relevant to court's exercise of discretion includes not only conservatee's wishes, but also whether conservatee has capacity to take proposed action and likelihood he or she would do so, as reasonably prudent person, if he or she had capacity].) The court further found that revocation of the Trust would benefit Barenchi by preventing her estate -- including her house -- from passing to Parker, whom the elderly Barenchi had met mere months before the Trust's execution while recovering from an illness, and who had subjected Barenchi to undue influence and "elder abuse." (See § 2583 [factors relevant to court's exercise of discretion include how estate will devolve upon conservatee's death, and whether beneficiary committed financial abuse against conservatee after conservatee was

19

unable to manage financial resources or resist undue influence].)[14] These findings were adequately supported by the information before the court, including: (1) Dr. Homeier's June 2016 declaration (on which the court expressly relied) indicating that a mere month after Barenchi executed the Trust, she lacked testamentary capacity and was at very high risk of undue influence; (2) Barenchi's statements to Dr. Homeier indicating that she had not wished to change her doctor and did not recall or understand that Parker had already made such a change; (3) Barenchi's unfamiliarity in October 2016 with a letter she had purportedly written in defense of Parker and believed she "ha[d] to" read to the court; (4) Barenchi's statements to the Public Guardian in November 2018 indicating she did not recall executing the Trust and did not want to "'give away [her] stuff'"; and (5) Freedman-Harvey's November 2018 declaration echoing Dr. Homeier's earlier opinions and reporting that Barenchi was "almost too cognitively impaired to evaluate." On this

---

[14] As an alternative ground for finding that the Trust's revocation would benefit Barenchi, the court accepted the Public Guardian's argument that revocation would enable the Public Guardian to obtain a reverse mortgage, as necessary to move Barenchi back into her house with paid care. Parker asserts the Public Guardian was mistaken concerning the Trust's impeding its ability to obtain a reverse mortgage, but cites no pertinent evidence or authority, and thus forfeits the issue. (See, e.g., *In re Phoenix H.* (2009) 47 Cal.4th 835, 845 [""Contentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned""].)

record, we conclude the Trust's revocation was within the "'broad latitude'" entrusted to the court. (*Murphy, supra,* 164 Cal.App.4th at 397.)

We reject Parker's contention that the information before the court was insufficient, requiring it to conduct a full evidentiary hearing. Contrary to Parker's assertion that the court "strongly discouraged" Barenchi's counsel from requesting an evidentiary hearing, the court assured counsel it would hold such a hearing if counsel wished. The court merely asked counsel to identify some basis for believing Barenchi's opposition to the petition might prevail after an evidentiary hearing. Rather than make an offer of proof, counsel abandoned his request. On appeal, Parker similarly fails to identify any additional information the court assertedly should have received at an evidentiary hearing. She thus fails to show the court abused its discretion in relying on the ample information before it, including the information summarized above. (See *Conservatorship of McElroy, supra,* 104 Cal.App.4th at 555 [in granting substituted judgment, trial court did not abuse its discretion in concluding "that the information before it was sufficient and, having heard the offers of proof, that a full contested evidentiary hearing was unnecessary"].)

We also reject Parker's contention that the court acted on an unspecified form of bias against her. Parker's sole purported evidence of bias is the court's finding that the Trust's revocation would benefit Barenchi by preventing Parker from receiving the entire estate upon Barenchi's

death.[15] This single adverse finding is insufficient to suggest even an appearance of bias, particularly in light of the evidence supporting it. (See *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674 ["The mere fact that the trial court issued rulings adverse to [plaintiff] on several matters in this case, even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias"].) Nothing in the record contradicts the court's assurance to Parker that it was not acting on "prejudgment," but instead on the evidence and arguments presented.

For the first time in her reply brief, Parker contends that Barenchi had the capacity to execute the Trust in May 2016, and that the court thus erred in revoking it more than three years later. Parker has forfeited this argument for two independent reasons. First, she failed to raise the argument in her opening brief. (See *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255 [""It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party""].) Second, even in her reply brief, Parker cites no evidence other than Dr. Fussell's conclusory declaration opining that Barenchi retained medical capacity. Parker fails to address Dr. Homeier's earlier and more detailed declaration

---

[15] The court observed Parker might, if appropriate, receive a lesser share of Barenchi's estate under a new estate plan, which it encouraged the Public Guardian to establish.

indicating Barenchi lacked medical *and testamentary* capacity (on which the court expressly relied), as well as other evidence supporting the court's ruling. "An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) In sum, we conclude the court acted within its broad discretion in revoking the Trust, and affirm the revocation order.[16]

### B. Orders Concerning Barenchi's Estate

We conclude that Parker lacks standing to maintain her appeals from the probate court's orders awarding Moore attorney fees from Barenchi's estate and appointing Noel administrator thereof. As noted, "'one must be both a party of record to the action *and aggrieved* to have standing to appeal.'" (*Turrieta, supra,* 69 Cal.App.5th at 970, rev.gr., italics added.) "A party is aggrieved 'only if its "rights or interests are injuriously affected by the judgment."' [Citation.] The aggrieved party's interest ""must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."'"" (*Id.* at 971.) Moreover, the interest must be "legally cognizable." (*In re Pacific Std. Life Ins. Co.* (1992) 9 Cal.App.4th 1197, 1201;

---

[16] We need not address Noel's argument that Parker forfeited her challenges to the revocation order by failing to file a written opposition in the probate court.

accord, Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 2-D ¶ 2:283.)

Even assuming, arguendo, that Parker satisfied the party-of-record requirement or an exception thereto, we conclude she lacks standing to maintain her appeals from the fee order and the appointment order because she was not aggrieved by either ruling. In the wake of the Trust's revocation (which we affirm), Parker had no cognizable interest in Barenchi's estate or the former trust property therein. Thus, she was not aggrieved by the order requiring the estate to pay Moore's attorney fees. (See *In re Estate of Thor* (1935) 11 Cal.App.2d 37, 38 [decedent's disinherited husband was stranger to her estate and thus lacked standing to appeal order approving executor's account and distributing estate]; accord, *Estate of Bartsch* (2011) 193 Cal.App.4th 885, 890-891.) Nor was Parker aggrieved by the order appointing Noel as administrator of the estate. As Barenchi's granddaughter, Noel had absolute priority over Parker (a non-relative). (See § 8461 [grandchildren have higher priority for appointment than anyone but spouses, domestic partners, and children]; Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2022) Ch. 3-G ¶ 3:353 ["The statutory priority rankings are absolute; so long as a person in a higher priority class is otherwise eligible [citation] and has not waived the right to priority of appointment, the court has no discretion to appoint someone in a lower class"].) Because Parker had no "legally cognizable" interest in being appointed in Noel's stead, she

was not aggrieved by Noel's appointment. (*In re Pacific Std. Life Ins. Co.*, *supra*, 9 Cal.App.4th at 1201.) In sum, we conclude that Parker lacks standing to maintain her appeals from the fee order and the appointment order, and that we must therefore dismiss those appeals for lack of jurisdiction.[17] (See Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 2-D ¶ 2:270.)

---

[17] Even had we possessed jurisdiction over the appeals, we would have found no error. Parker has forfeited any contention that the probate court erred in granting Moore's unopposed petition for attorney fees under section 2640.1 by failing to cite the statute or any authority construing it. (See *South of Market Community Action Network v. City and County of San Francisco* (2019) 33 Cal.App.5th 321, 349 ["failure to cite pertinent legal authority is grounds for appellate court to reject party's argument"]; Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief must, where possible, "support each point . . . by citation of authority"].) Parker similarly fails to address the statute conferring on Noel absolute priority for appointment as administrator of Barenchi's estate, and thus fails to show the court erred in granting Noel's unopposed petition for the appointment. (See § 8461; Ross & Cohen, Cal. Practice Guide: Probate, *supra*, Ch. 3-G ¶ 3:353.)

**DISPOSITION**

The order revoking the Trust is affirmed.  Parker's appeals from the order awarding Moore attorney fees and the order appointing Noel administrator of Barenchi's estate are dismissed.  Moore and Noel are awarded their costs on appeal.  The Public Guardian shall bear its own costs on appeal, if any.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

CURREY, J.

STONE, J.*

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.